IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

AUG 1 8 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | Criminal Case No. 1:20-CR-192 |
| | Count 1: Conspiracy |
| | (18 U.S.C. § 371) |
| ASHISH SAWHNEY, | Count 2: Conspiracy to Induce Aliens to Come to the United States for Purposes of Private Financial Gain |
| Defendant. | (8 U.S.C. § 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I), and (a)(1)(B)(i)) |
| | Counts 3-5: Inducing An Alien to Come to the United States for Purposes of Private Financial Gain |
| | (8 U.S.C. § 1324(a)(1)(A)(iv), (a)(1)(A)(v)(II), and (a)(1)(B)(i)) |
| | Count 6: Attempted Unlawful Procurement of Naturalization |
| | (18 U.S.C. §§ 1425(a) and 2) |
| | Forfeiture Notice |

### INDICTMENT

August 2020 Term - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

#### General Allegations

At all times relevant to this Indictment:

1.      The defendant, ASHISH SAWHNEY ("SAWHNEY") was an Indian national

who obtained a Permanent Resident Card authorizing him to reside in the United States.

1

2. The Department of Homeland Security ("DHS"), the Department of Labor ("DOL"), and the Department of State ("DOS") were departments within the executive branch of the United States government.

3. United States Citizenship and Immigration Services ("USCIS") was an agency within DHS that assisted in administering the United States' immigration system, including, processing H-1B visa petitions and applications for naturalization.

<u>The H-1B Visa Program</u>

4. The H-1B visa program allowed American businesses to temporarily employ foreign workers with specialized or technical expertise and formal education in occupations that require at least a U.S. Bachelor's degree in the field or a foreign equivalent such as accounting, engineering, or computer science, among others. The U.S. government limited the issuance of H-1B visas to 65,000 visas per year, nationwide. The H-1B program supported American businesses by allowing them to employ highly educated foreign workers to address temporary business needs, but required the sponsoring companies to meet strict conditions that protected both the foreign workers and the American workforce.

5. Before hiring a foreign worker under the H-1B visa program, the employer was required to obtain certification from DOL by filing a Labor Condition Application ("LCA"), ETA Form 9035E. In the LCA, the employer represented that as of the date of the filing, it had a temporary need for workers and intended to employ a foreign worker in a specific position for a particular period of time. The maximum length of employment that could be requested on the LCA was three years. For each position, the employer was required to set forth whether the position was full-time and the location where the prospective foreign employee would work. The employer was further required to confirm that the foreign worker (hereinafter "beneficiary")

2

would be paid the prevailing wage for the position in that locale. The employer was required to also represent that it would pay the beneficiary for non-productive time—that is, an employer who sponsored a beneficiary was required to pay wages and other benefits to the beneficiary, even if the beneficiary was not actively working for certain periods of time. Employers were prohibited by program regulations from requiring that beneficiaries pay, directly or indirectly, costs related to the preparation or filing of the H-1B petition. Finally, the documents associated with the LCA requirements must be physically maintained by the employer at its headquarters or the place of the alien's employment in a public access file. This public access file must be retained for a period of at least one year after the expiration or withdrawal of the LCA.

6.      The LCA form, which contained an explicit warning that false representations might lead to criminal prosecution, required that the employer attest that all representations in the application were true and accurate. Except in limited circumstances, the employer filed the LCA electronically. Once DOL certified the employment need described in the LCA, it sent the employer a copy of the certified LCA via email.

7.      Upon certification of the LCA by DOL, the employer was required to then obtain permission from DHS, to include its component USCIS, to hire a specific foreign worker to fill the position. The employer obtained this approval by filing a Form I-129 Petition for a Nonimmigrant Worker ("Form I-129" or "I-129 petition"), including the H Classification Supplement, on behalf of the identified beneficiary, and paying certain processing-related fees to DHS. In the I-129 petition, the employer provided much of the same information that was on the LCA, such as background information about the beneficiary and the employment opportunity, to include: (1) request to change, amend, or continue immigration status, (2) job title, (3) location of intended employment, (4) whether the position was full time, and if not, how many hours per

3

week the beneficiary would work, (5) rate of pay (which had to be at least the prevailing wage for that position in that locale), (6) dates of intended employment, (7) proposed duties of the position offered to the beneficiary, and (8) the beneficiary's present occupation and summary of prior work experience.

8.     The employer also was required to establish that the specific beneficiary would be employed in a specialty occupation and show that the beneficiary had the education and specialized or technical expertise to fill the position. The employer was required to include with the I-129 evidence that DOL certified an LCA for the job specified in the petition, that the proposed employment qualified as a specialty occupation, that the beneficiary had the required degree and any required license or other official permission to practice the occupation in the state of intended employment, and a copy of any written contract between the petitioner and the beneficiary or a summary of the terms of the oral agreement under which the beneficiary would be employed.

9.     The I-129 required employers to certify, under penalty of perjury, that they had reviewed the petition and that all of the information contained in the petition and supporting documents, including all responses to specific questions, was complete, true, and correct. USCIS regulations further provided that by signing a benefit request, the petitioner certified that the benefit request, and all evidence submitted with it, either at the time of filing or thereafter, was true and correct.

10.     The petitioning employer also authorized the release of any information that USCIS needed to determine eligibility for the immigration benefit sought. USCIS had authority to conduct audits of the petition using publicly available, open source information. The petitioner recognized that any evidence submitted in support of the petition might be verified by

4

USCIS through any means determined appropriate by USCIS, including, but not limited to, on-site compliance reviews.

11.     The Forms I-129 were mailed to a USCIS processing center. Once USCIS approved the I-129 petition, the beneficiary identified in the petition could apply for a visa with DOS at a U.S. consulate or embassy overseas to enter the United States to begin employment. If the beneficiary was already in the United States legally, his or her immigration status could be changed and/or extended to reflect the H-1B employment.

12.     If the beneficiary's job duties, compensation, or location changed, an amended certified LCA and I-129 petition were required to be submitted to USCIS. If the employment ended, the employer was obligated to notify USCIS and offer to pay for the beneficiary to return to his or her native country. The employer was required to begin paying the beneficiary's salary beginning on the date the beneficiary entered into employment. Even if the beneficiary had not entered into employment, the employer was required to begin paying him or her within 60 days of visa issuance if the beneficiary was already in the United States, or within 30 days of admission to the United States if the beneficiary lived abroad.

The Value Consulting Companies

13.     In and around January 2004, Value Consulting, LLC was formed in Delaware.

14.     In and around August 2005, Value Consulting, Inc. (later renamed Value Software Products, Inc.) was incorporated in Maryland. SAWHNEY was listed as the Director.

15.     As of in and around March 2006, SAWHNEY is listed as Value Consulting, LLC's registered agent in Virginia, as well as its Member/President.

16.     In and around December 2008, E-Train ERP Inc. was established in Virginia. SAWHNEY's spouse A.K. was listed as the initial registered agent and Director.

5

17. In and around March 2012, Business Pointers Inc. was established in Virginia and SAWHNEY was listed as the initial director of the corporation.

18. Value Consulting, LLC; Value Software Products, Inc. (formerly known as Value Consulting, Inc.); Business Pointers, Inc.; and E-Train ERP, Inc. were U.S.-based business entities owned or controlled by SAWHNEY and by others known and unknown to the Grand Jury. The above-listed business entities are collectively described elsewhere in this Indictment as "the Valcon Companies." The Valcon Companies had offices physically located in the Eastern District of Virginia and purported to provide information technology ("IT") staffing and software development services for commercial clients in need of IT support throughout the United States.

19. SAWHNEY acted as director and/or registered agent for Value Consulting, LLC; Value Consulting, Inc. (later renamed Value Software Products, Inc.); and Business Pointers, Inc. SAWHNEY also acted as an officer or authorized agent for E-Train ERP, Inc.

20. SAWHNEY and others known and unknown to the Grand Jury opened bank accounts in the names of the individual Valcon Companies and used those accounts to receive payments from beneficiaries and end clients, pay USCIS filing fees, transfer funds, pay wages to beneficiaries, and take payments for themselves.

## COUNT 1

### (Conspiracy)

THE GRAND JURY FURTHER CHARGES THAT:

21. The General Allegations of this Indictment are re-alleged and incorporated by reference as if they were fully set forth herein.

22. From in and around August 2011 through on or about April 25, 2016, the exact dates being unknown to the Grand Jury, within the Eastern District of Virginia and elsewhere, the defendant, ASHISH SAWHNEY, did knowingly and intentionally combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to do the following:

    a.     to defraud the United States, that is, to knowingly and willfully impair, obstruct, and defeat the lawful functions of DOS, DOL, and DHS, including USCIS, with respect to the application, review, investigation, and decision-making process for determining eligibility for entry into and immigration benefits to remain in the United States;

    b.     to make under oath, and as permitted under penalty of perjury, knowingly subscribe as true, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly presenting such application, affidavit, and other document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States which contained such false statement, in violation of Section 1546(a) of Title 18, United States Code; and,

c.    to knowingly and willfully make a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, in violation of Section 1001(a)(2) of Title 18, United States Code.

## OBJECT OF THE CONSPIRACY

The primary purpose of the conspiracy was to obtain money from visa beneficiaries and end clients by means of securing H-1B visas through false and fraudulent representations – including, but not limited to, that the petitioning company had a bona fide job available for the beneficiary at the time of filing – and that such false and fraudulent representations were made to DOS, DOL, DHS, and components of those departments.

## MANNER AND MEANS OF THE CONSPIRACY

23.    The manner and means by which the conspirators conducted the conspiracy included the following:

24.    It was part of the conspiracy that members of the conspiracy encouraged foreign workers to come to the United States with the promise of a job opportunity at one of the Valcon Companies, where no such job actually existed;

25.    It was further part of the conspiracy that members of the conspiracy persuaded prospective foreign workers to transfer money to accounts held by the Valcon Companies regardless of whether an immigration petition would actually be filed on their behalf;

26.    It was further part of the conspiracy that members of the conspiracy created and distributed fraudulent end-client or offer letters and other documents to support H-1B documents submitted to the DOL and USCIS by one or more of the Valcon Companies;

27.    It was further part of the conspiracy that members of the conspiracy submitted or caused to be submitted LCAs to DOL falsely representing that a company had a temporary need for full-time workers and that the company would pay nonimmigrant workers for all hours worked and for any nonproductive time;

28.    It was further part of the conspiracy that members of the conspiracy submitted or cause to be submitted Forms I-129 to the USCIS falsely representing that a company would employ a nonimmigrant worker in a full-time specialty occupation in the stated location;

29.    It was further part of the conspiracy that members of the conspiracy encouraged nonimmigrant workers to enter and remain in the United States using fraudulently obtained visas and find work for themselves for the benefit of the co-conspirators; and

30.    It was further part of the conspiracy that members of the conspiracy transferred money to related Valcon Company accounts to support the continued operation of the fraudulent scheme.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy, and to accomplish its objects and purposes, the defendant and his co-conspirators knowingly performed and caused to be performed overt acts in the Eastern District of Virginia and elsewhere. These overt acts included the following:

31.    On or about August 18, 2011, SAWHNEY and his co-conspirators caused the submission to USCIS of a Form I-129 Petition for a Nonimmigrant Worker and supporting exhibits on behalf of R.N., which falsely represented that Value Consulting Inc. would employ R.N. as a Systems Applications and Products (SAP) Lead Consultant in a location that was a residence on Apollo Terrace in Ashburn, Virginia owned by SAWHNEY ("the Ashburn residence").

9

32.     On or about December 5, 2011, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits on behalf of J.M., which falsely represented that Value Consulting, Inc. intended to employ J.M. as a Business Analyst at an office location in Herndon, Virginia, as well as at a residence in Hanover, New Hampshire.

33.     On or about May 2, 2012, foreign worker R.N. entered the United States at Washington Dulles International Airport in Dulles, Virginia, on an H-1B visa, which was based on an approved, fraudulent Form I-129 petition prepared by Value Consulting. As instructed by a Valcon Company employee, R.N. listed on the Form I-94 Arrival Record the Ashburn residence as his intended destination in the United States. R.N. provided the I-94 to U.S. Customs and Border Protection (CBP) upon his arrival.

34.     On or about July 30, 2012, SAWHNEY and his co-conspirators caused the submission of a second Form I-129 and supporting exhibits to USCIS on behalf of J.M., which falsely represented that Business Pointers Inc. intended to employ J.M. as a Business Analyst at the Business Pointers Inc. office in Reston, Virginia and at the Ashburn residence.

35.     On or about March 1, 2013, foreign IT worker J.M. entered the United States at Washington Dulles International Airport on an H-1B visa, which was based on an approved, fraudulent I-129 petition prepared by Business Pointers. As instructed by Valcon Company employees, J.M. listed on the Form I-94 Arrival Record the Ashburn residence as his intended destination in the United States. J.M. provided the I-94 to CBP upon his arrival.

36.     In and around March 2013, one or more co-conspirators induced J.M. to sign a "Delayed Joining" letter that falsely represented that J.M. was not available to start working for Business Pointers Inc.

37.     On or about March 3, 2014, one or more co-conspirators recruited foreign IT worker P.S., who was required to make a $5,000 payment via wire transfer to the Business Pointers Inc. Bank of America account ending in x6104 in order to be sponsored for an H-1B visa.

38.     On or about March 18, 2014, one or more co-conspirators recruited foreign IT workers M.T. and S.T. and induced them to make a $3,500 payment to the E-Train ERP Inc. Bank of America account ending in x9114 in order to be sponsored for H-1B visas.

39.     On or about March 24, 2014, SAWHNEY, with others known and unknown to the Grand Jury, caused the submission of a Labor Condition Application to DOL that falsely represented that Business Pointers Inc. had a temporary need for a full-time Programmer Analyst and designated locations in Sterling, Virginia and McLean, Virginia as the places of intended employment.

40.     On or about April 29, 2014, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS on behalf of S.T., which falsely represented that Business Pointers Inc. intended to employ S.T. as a Programmer Analyst at locations in Sterling, Virginia and McLean, Virginia.

41.     On or about May 8, 2014, SAWHNEY and his co-conspirators caused the submission of a Labor Condition Application to DOL that falsely represented that Value Software Products Inc. had a temporary need for a full-time Business Analyst and designated locations in Coppell, Texas; Dallas, Texas; and Manassas, Virginia as the places of intended employment.

42.     On or about May 20, 2014, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS on behalf of J.G., which falsely

represented that Value Software Products Inc. intended to employ J.G. full-time as a Business Analyst to perform work for its client E-Train ERP Inc.

43.     On or about August 7, 2014, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS on behalf of G.S., which falsely represented that Value Software Products Inc. intended to employ G.S. as a Programmer Analyst to perform work for its client E-Train ERP Inc.

44.     On or about October 3, 2014, a co-conspirator induced a recruited foreign IT worker H.K. to make a payment of 120,000 Indian rupees to an ICICI Bank Limited bank account ending in x0779 in order to be sponsored for an H-1B visa.

45.     On or about November 4, 2014, SAWHNEY and his co-conspirators caused the submission of a Labor Condition Application to DOL that falsely represented that Value Software Products Inc. had a temporary need for a full-time Quality Analyst and designated locations in Manassas, Virginia and Sterling, Virginia as the places of intended employment.

46.     On or about November 17, 2014, SAWHNEY and his co-conspirators caused the submission of a Labor Condition Application to DOL that falsely represented that Value Consulting LLC had a temporary need for a full-time Computer Systems Analyst and designated three locations in Sterling, Virginia and Herndon, Virginia as the places of intended employment.

47.     On or about November 26, 2014, one or more co-conspirators induced a recruited foreign IT worker B.J. to make a payment of $2,000 by wire transfer to the E-Train ERP Inc. Bank of America bank account ending in x9114 in order to be sponsored for an H-1B visa.

48.     On or about November 28, 2014, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS that falsely represented that Value

Consulting LLC intended to employ S.A. as a Computer Systems Analyst to perform work for its client Business Pointers Inc.

49.     On or about December 19, 2014, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS that falsely represented that Value Software Products Inc. intended to employ H.K. as a Quality Analyst to perform work for its end-client E-Train ERP Inc.

50.     On or about February 3, 2015, one or more co-conspirators induced a recruited foreign IT worker K.N.J. to make a payment of $2,750 to E-Train ERP Inc. Bank of America account ending in x9114 in order to be sponsored for an H-1B visa.

51.     On or about February 6, 2015, SAWHNEY and his co-conspirators caused the submission of supporting exhibits to USCIS in response to a Request for Evidence (RFE) that falsely represented that Value Software Products Inc. intended to employ H.K. as a Quality Analyst to perform work for E-Train ERP Inc. for H.K.'s entire H-1B validity period.

52.     On or about March 9, 2015, SAWHNEY and his co-conspirators caused the submission of supporting exhibits to USCIS in response to an RFE that falsely represented that Value Consulting LLC intended to employ S.A. as a Computer Systems Analyst to provide software application development services to Business Pointers Inc.

53.     On or about April 6, 2015, one or more co-conspirators induced a recruited foreign IT worker, R.S., to make a payment of $2,250 to E-Train ERP Inc. Bank of America account ending in x9114 in order to be sponsored for an H-1B visa.

54.     On or about April 17, 2015, SAWHNEY and his co-conspirators caused the submission of a Labor Condition Application to DOL that falsely represented that Value

13

Consulting LLC had a temporary need for a full-time SAP Analyst and designated three locations in Sterling, Virginia and Houston, Texas as the places of intended employment.

55.     On or about April 22, 2015, SAWHNEY signed checks drawn on a Bank of America account ending in x6525 in the amounts of $750, $500, and $325 to pay the USCIS filing fees for a Form I-129 on behalf of R.S.

56.     On or about May 5, 2015, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS on behalf of R.S. that falsely represented that Value Consulting LLC intended to employ R.S. as a SAP Analyst to perform work for the end-client Business Pointers Inc.

57.     On or about July 14, 2015, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS on behalf of A.K.M. that falsely represented that VSP intended to employ A.K.M. as a Solution Architect at end-client E-Train ERP located in Manassas, Virginia.

58.     Between on or about March 8, 2016 and on or about March 12, 2016, one or more co-conspirators induced a recruited foreign IT worker, A.M., to make payments totaling 80,000 Indian rupees to an ICICI Bank Limited bank account ending in x0779 in order to be sponsored for an H-1B visa.

59.     On or about March 18, 2016, SAWHNEY and his co-conspirators caused the submission of a Labor Condition Application to DOL that falsely represented that E-Train ERP Inc. had a temporary need for a full-time Programmer Analyst and designated locations at the Ashburn residence and in Manassas, Virginia as the places of intended employment.

60.     On or about April 25, 2016, SAWHNEY and his co-conspirators caused the submission of a Form I-129 and supporting exhibits to USCIS on behalf of A.M. that falsely represented that E-Train ERP Inc. intended to employ A.M. as a Programmer Analyst.

(All in violation of Title 18, United States Code, Section 371.)

## COUNT TWO

**(Conspiracy to Induce Aliens to Come to the United States
for Purposes of Private Financial Gain)**

THE GRAND JURY FURTHER CHARGES THAT:

61.     The General Allegations, and the allegations contained in the Manner and Means

of the Conspiracy and in the Overt Acts of the Conspiracy in Count One, of this Indictment are

re-alleged and incorporated by reference as if fully set forth herein.

62.     From in and around August 2011 through in and around April 2016, in the

Eastern District of Virginia and elsewhere, the defendant, ASHISH SAWHNEY, for the purpose

of commercial advantage and private financial gain, did knowingly and intentionally conspire

with persons known and unknown to the Grand Jury to encourage and induce aliens to come to

and enter the United States, knowing and in reckless disregard of the fact that such coming to

and entry was and would be in violation of law.

(In violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I) and (a)(1)(B)(i).)

## COUNT THREE

### (Inducing an Alien to Come to the United States
### for Purposes of Private Financial Gain)

THE GRAND JURY FURTHER CHARGES THAT:

63.     The General Allegations, and the allegations contained in the Manner and Means of the Conspiracy and in the Overt Acts of the Conspiracy in Count One, of this Indictment are re-alleged and incorporated by reference as if fully set forth herein..

64.     From on or about August 18, 2011, through on or about December 4, 2012, in Loudoun County, within the Eastern District of Virginia and elsewhere, the defendant, ASHISH SAWHNEY, for purposes of commercial advantage and private financial gain did encourage and induce R.N., an alien, to come to, enter, and reside in the United States, and aided and abetted the same, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law.

(In violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), (a)(1)(A)(v)(II), and (a)(1)(B)(i).)

## COUNT FOUR

### (Inducing an Alien to Come to the United States
### for Purposes of Private Financial Gain)

THE GRAND JURY FURTHER CHARGES THAT:

65.     The General Allegations, and the allegations contained in the Manner and Means

of the Conspiracy and in the Overt Acts of the Conspiracy in Count One, of this Indictment are

re-alleged and incorporated by reference as if fully set forth herein.

66.     From on or about July 30, 2012, through on or about May 8, 2014, in Loudoun

County, within the Eastern District of Virginia and elsewhere, the defendant, ASHISH

SAWHNEY, for purposes of commercial advantage and private financial gain did encourage and

induce J.M., an alien, to come to, enter, and reside in the United States, and aided and abetted the

same, knowing and in reckless disregard of the fact that such coming to, entry, and residence was

and would be in violation of law.

(In violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), (a)(1)(A)(v)(II), and (a)(1)(B)(i).)

## COUNT FIVE

### (Inducing an Alien to Come to the United States
for Purposes of Private Financial Gain)

THE GRAND JURY FURTHER CHARGES THAT:

67.     The General Allegations, and the allegations contained in the Manner and Means

of the Conspiracy and in the Overt Acts of the Conspiracy in Count One, of this Indictment are

re-alleged and incorporated by reference as if fully set forth herein.

68.     From on or about August 7, 2014, through on or about April 22, 2015, in

Loudoun County, within the Eastern District of Virginia and elsewhere, the defendant, ASHISH

SAWHNEY, for purposes of commercial advantage and private financial gain did encourage and

induce G.S., an alien, to come to, enter, and reside in the United States, and aided and abetted the

same, knowing and in reckless disregard of the fact that such coming to, entry, and residence was

and would be in violation of law.

(In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv), (B)(i) and Title
8, United States Code, Section(a)(1)(A)(v)(II).)

## COUNT SIX

### (Attempted Unlawful Procurement of Naturalization)

THE GRAND JURY FURTHER CHARGES THAT:

69.     The General Allegations, and the allegations contained in the Manner and Means of the Conspiracy and in the Overt Acts of the Conspiracy in Count One, of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

### The Naturalization Application Process

70.     Naturalization was the process by which a foreign citizen or national could become a United States citizen, if qualified.  Generally, an applicant for naturalization must be at least 18 years old and establish that he or she has been lawfully admitted to the United States for permanent residence (an "LPR," also known as a "Green Card" holder) for at least five years, among other eligibility requirements.  An applicant is not lawfully admitted for permanent residence in accordance with all applicable provisions of the Immigration and Nationality Act (INA) if his or her LPR status was obtained by mistake or fraud, or if the admission was otherwise not in compliance with the law.

71.     An applicant for naturalization must, among other things, honestly complete and file with USCIS a Form N-400 Application for Naturalization ("the N-400"), attend a sworn, in-person interview, and pass an English and Civics examination.  In determining an applicant's eligibility for naturalization, USCIS must assess whether the LPR status was lawfully obtained, not just whether the applicant is in possession of a Permanent Resident Card or "Green Card."

72.     A primary purpose of the N-400 application was to assess whether the applicant possessed Good Moral Character, a statutory requirement for naturalization.  Failure to provide

20

any or all of the requested information might result in a denial of the application for naturalization.

## ASHISH SAWHNEY's Immigration History

73.     On or about May 25, 2005, ASHISH SAWHNEY and others known and unknown to the grand jury caused the filing of a Form I-129 Petition for a Nonimmigrant Worker by Value Consulting LLC seeking H-1B visa status for SAWHNEY.

74.     On or about September 4, 2007, SAWHNEY submitted to USCIS a Form I-485, Application to Register Permanent Residence or Adjust Status. In the Form I-485 and supporting documents, SAWHNEY concealed the fact that he had been directing the operations of the Valcon Companies since at least in and around January 2004, and falsely claimed in Part 3 of the Form I-485 never to have committed any crime of moral turpitude for which he had not been arrested (Question 1.a.); and never within the past ten years to have knowingly encouraged, induced, assisted, abetted or aided any alien to try to enter the United States illegally (Question 3.c.).

75.     On or about September 30, 2009, in Fairfax, Virginia, Defendant SAWHNEY was interviewed under oath by a USCIS officer regarding his Form I-485 to establish his eligibility and admissibility for adjustment of status to lawful permanent residence. Defendant SAWHNEY amended some information on the Form I-485, but did not amend, change, or correct his false responses to Questions 1.a. or in 3.c.

76.     On or about October 19, 2013, USCIS approved Defendant SAWHNEY's Form I-485 and SAWHNEY subsequently obtained a Permanent Resident Card.

77.     On or about January 5, 2019, SAWHNEY completed and signed a Form N-400 Application for Naturalization, affirming under penalty of perjury under the laws of the United

States that his application and the evidence submitted with it were all true and correct. He subsequently submitted and caused the submission of the Form N-400 to the USCIS Office located within the Eastern District of Virginia.

      a.     In the Part 8. "Information About Your Employment and Schools You Attended" section of the N-400, SAWHNEY listed that he was employed by Business Pointers Incorporated from April 1, 2014 to the present, and by Value Consulting LLC from September 30, 2009 to April 1, 2014.

      b.     In the Part 12. "Additional Information About You" section of the N-400, Question 22 asked the question, "Have you EVER committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested?" Defendant SAWHNEY responded, "No."

      c.     Within Part 12., Question 30.F. asked the question, "Have you EVER helped anyone to enter, or try to enter, the United States illegally? Defendant SAWHNEY responded, "No."

      d.     Within Part 12., Question 31, asked the question, "Have you EVER given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading?" to which Defendant SAWHNEY responded, "No."

      e.     Within Part 12., Question 32, asked the question, "Have you EVER lied to any U.S. Government officials to gain entry or admission into the United States or to gain immigration benefits while in the United States?" to which Defendant SAWHNEY also responded, "No."

78. From on or about January 5, 2019 up to and including the date of this Indictment, in Fairfax County, Virginia, within the Eastern District of Virginia and elsewhere, the defendant, ASHISH SAWHNEY, did knowingly attempt to procure his own naturalization contrary to law when he knowingly provided a false statement as to a material fact during the naturalization process, to wit: falsely responded in the N-400 that he had never committed, assisted in committing, or attempted to commit, a crime for which he was not arrested; that he had never helped anyone to enter, or try to enter, the United States illegally; that he had never given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading; and that he had never lied to any U.S. Government official to gain entry or admission into the United States or to gain immigration benefits while in the United States.

(In violation of Title 18, United States Code, Sections 1425(a) and 2).

## FORFEITURE NOTICE

The Grand Jury finds that there is probable cause that the property described in this FORFEITURE NOTICE is subject to forfeiture pursuant to the statutes described herein.

Pursuant to Rule 32.2(a), defendant ASHISH SAWHNEY is hereby notified that, if convicted of any of the offenses alleged in Counts One through Six of this Indictment, he shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(6)(A), the following: (1) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which he is convicted; (2) any property real or personal which constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which he is convicted; and (3) any property real or personal that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which he is convicted. The property includes, but is not limited to:

    a. a monetary judgment in the amount of not less than $21,000,000.000, representing the proceeds the defendant obtained from the violations charged in this Indictment.

    b. Accounts 004113876525, 3921743566, and 435014123166 in the name of Value Consulting LLC at the Bank of America;

    c. Account 435008291062 in the name of Value Consulting Inc. at the Bank of America;

    d. Account 435003027817 in the name of Value Software Products Incorporated at the Bank of America;

    e. Account 435026186104 in the name of Business Pointers Incorporated at Bank of America;

    f. Account 435030159114 in the name of E-Train ERP Inc. at the Bank of America; and

    g. Accounts 003914466630 and 003914470943 in the names of Ashish Sawhney and/or Anjali Sawhney, at Bank of America.

Pursuant to Title 21, United States Code, Section 853(p), ASHISH SAWHNEY shall forfeit substitute property, up to the value of the amount describe above, if, by any act or omission of the defendant, the property or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All in accordance with Title 18, United States Code, Sections 982(a)(6)(A); Title 21, United States Code, Section 853(p); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

Dated this _____ day of August 2020

A TRUE BILL

Pursuant to the E-Government Act,,
The original of this page has been filed
Foreperson of the Grand Jury

G. Zachary Terwilliger
United States Attorney

Raizza K. Ty
Ronald L. Walutes, Jr.
Assistant United States Attorneys

25